**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE BALTAZAR LOPEZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 10 cv 08024 |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary reversal [11], filed by Plaintiff Jose Baltazar Lopez, seeking judicial review of a decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration, denying his application for disability insurance benefits ("DIB"). Plaintiff asks the Court to reverse the decision of the Administrative Law Judge denying him benefits or, alternatively, remand for further proceedings. Defendant has filed a memorandum in support of the Commissioner's decision and Plaintiff has a filed a reply in support of his motion. For the following reasons, the Court denies Plaintiff's request and affirms the decision of the Administrative Law Judge.

**I.     Procedural Background**

On August 28, 2007, Plaintiff applied for disability insurance benefits, alleging that he became disabled as of July 21, 2006. See Administrative Record at 88-95.[1] Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on June 2, 2009, before an Administrative Law Judge ("ALJ"). R. at 29-45. In a

---

[1] Unless otherwise indicated, all references in Sections I and II refer to the administrative record in this matter.

1

decision dated September 24, 2009 the ALJ denied Plaintiff's claim for disability benefits, which included the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since July 21, 2006, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: left foot crush injury; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: he is able to perform less than full range of sedentary work. The claimant can lift/carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk two hours during an eight hour work day; and sit at least six hours during an eight hour work day. He should be provided a sit-stand option at will and avoid climbing ladders ropes and scaffolding. He can occasionally climb ramps/stairs, balance, stoop, crouch, kneel and crawl and be allowed to use a cane as needed for ambulation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 2, 1967 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined by the Social Security Act, from July 21, 2006 through the date of this decision (20 CFR 404.1520(g)).

R. at 15-28.

Plaintiff sought review of the ALJ's decision and the Appeals Council denied his request, leaving the ALJ's decision the final decision of the Commissioner. R. at 8-12. Plaintiff now seeks judicial review of the final decision of the Commissioner of Social Security. This Court has jurisdiction pursuant to 28 U.S.C. § 405(g).

**II.     Facts**

    **A.     Background**

Plaintiff, born on April 2, 1967, was forty-two years old on the date of hearing. R. at 26. Plaintiff has marginal employment and limited English comprehension. R. at 16, 32. Plaintiff has worked as an assembler, machine operator, laborer, and fork lift operator. R. at 122-129. Plaintiff alleged in his application that he is unable to work due to an accident that crushed his left foot. R. at 88.

B.     **Medical Evidence**

On July 21, 2006, Plaintiff was injured while working as a forklift driver. Specifically, his left foot and ankle crushed when it was pinned between the metal body of the forklift and a metal pole. R. at 185. Plaintiff was immediately taken to the Tyler Medical Center. His treatment included stiches in his left heel, cephalexin and hydrocodone. *Id*.

Three days later, on July 24, 2006, Plaintiff returned to the Tyler Medical Center complaining of worsening pain and swelling in his left foot. R. at 183. He was transferred to the emergency room at Provena Mercy Medical Center. R. at 183, 205. In addition to his crush injury, he developed an infected hematoma in this left foot. R. at 208. His foot was swollen up to his mid-calf and there were several bloody blisters along the sole of his foot. *Id*. Lopez spent four days in the hospital receiving intravenous antibiotics. *Id*. On July 26, 2006, Plaintiff had surgery for irrigation and debridement of the infected hematoma. R. at 205. Lopez was discharged from the hospital on July 27, 2006 with a diagnosis of crush injury of the left foot, infected hematoma and cellulitis secondary to the crush injury. R. at 309.

In August 2006, Lopez was evaluated by Dr. W. John Bull at the Rush Copley Medical Center. R at 194. Dr. Bull noted that Plaintiff's foot had a necrotic heel pad and medial malleolus, as well as significant skin necrosis of the instep of the foot and the lateral malleolus. R. at 198. For treatment, Dr. Bull performed a debridement of the necrotic tissues from the heel and medial malleolus and irrigated the wound. R. at 198, 223. Dr. Bull also consulted with Dr. Darl Vandevender at Loyola Medical Center to consider Plaintiff's best next steps to provide the best walking surface for Plaintiff. R. at 223. At a follow up appointment in September 2006, Plaintiff reported that his pain was improving and had no complaints. R. at 228.

Dr. Vandevender concluded that Plaintiff would benefit from a radial free flap replacement on this left foot. R. at 626. This included an elective debridement on October 4, 2006 to prepare for the procedure. R. at 625. Next, on October 10, 2006, a skin graft was harvested from Plaintiff's left forearm and Dr. Vandevender performed a radial free flap on Plaintiff's left foot. R. at 626-628. Plaintiff was discharged with instructions to limit his weight bearing on his left leg. R. at 625. At a follow up appointment two weeks later, Dr. Vandevender noted that Plaintiff was doing well and that his pain was controlled. R. at 648. By March 2007, Plaintiff was transitioning from using crutches to a cane with the help of physical therapy and a custom orthotics insert. R. at 645. Plaintiff's wound had healed well. *Id*.

Despite the improvement, Plaintiff expressed that he had pain in his foot after standing for long periods of time and at the end of the day. *Id*. Dr. Vandevender recommended that he undergo a work conditioning program. *Id*. In June 2007, after three weeks of work conditioning, Plaintiff underwent a Functional Capacity Evaluation ("FTC") by physical therapist, Diane Newquist. R. at 642, 654-55. Newquist concluded that Plaintiff's main limiting factor was his inability to stand for prolonged periods of time. R. at 654. Plaintiff's maximum tolerance to standing was 15-20 minutes and his safe recommended physical demand level was light-medium for lifting ability. *Id*. Light-medium lifting ability means that Plaintiff could carry 26 pounds occasionally and 13 pounds frequently. R. at 665. While Plaintiff was able to walk without a cane, Newquist recommended that he continue to use the cane to improve his gait pattern and avoid overcompensating. R. at 654. After the FTC, Dr. Vandevender noted that Plaintiff would have to be placed in a different job, as he could no longer tolerate previous job by description and recommended an additional two weeks of work conditioning. R. at 642. At the conclusion of the work condition program, the physical therapists concluded that Plaintiff could stand for 30

minutes, but with pain in his foot and ankle after 10-15 minutes of weight bearing activities. R. at 692.

In November 2007, Plaintiff reported pain in his left ankle during a visit at Dreyer Medical Center. R. at 697. X-rays of his foot showed a small planter calcaneal spur, mild spurring off the anterior aspect of distal tibial epiphysis and involving the posterior aspect of the talus. There was also soft tissue swelling and probable degenerative changes involving the left foot in the region of the calcaneocuboid joint and both knees. R. at 700, 702.

Plaintiff underwent an internal medicine consultative examination for the bureau of disability determination services by Dr. ChukwuEmeka Ezike in December 2007. R. at 707-710. Dr. Ezike reported that Plaintiff could walk greater than 50 feet without support. R. at 709. However, Plaintiff was unable to perform heel walk on the left heel due to pain. *Id*. Dr. Ezike also reported mild to moderate tenderness over the left heel graft. *Id*.

In May 2008, Plaintiff complained of pain and numbness in his left lower extremity and back and sought treatment from Dr. Vohra at Painmed Centers in Plainfield, Illinois. R. at 761. Plaintiff's pain treatment included physical therapy, Neurotin and Vicoprofen. R. at 758-760. Dr. Vohra conducted a sensory nerve conduction study, a motor nerve conduction study, a F-wave study, a H-reflex study, and a needle EMG. R. at 761. The results from these tests were all within normal limits. *Id*. In June, Plaintiff reported improvements in his lower back pain. R. at 766. In July, Plaintiff told Dr. Vohra that his new shoes and orthotics were very helpful but he still had pain with prolonged standing or walking. R. at 770. A month later, Plaintiff was prescribed Neurontin again for his lower back and heel pain. R. at 771. Plaintiff's use of Neurontin continued through January 2009. R. 771-76. On January 15, 2009, Plaintiff reported an increase of pain. R. at 776.

### C. The Hearing on June 2, 2009

At the time of the hearing on June 2, 2009, Plaintiff testified concerning his medical condition with the assistance of Spanish language interpreter. Plaintiff stated that he continued to take his medications for the pain in his left foot. R. at 34. He noted that the medication causes nausea and a "feeling of vomiting" and that the number of milligrams he takes has been decreased as a result. *Id*. Plaintiff testified that he uses a cane to walk. *Id*. He estimated that he can walk 10 minutes before experiencing pain and swelling in his foot. *Id.* Plaintiff testified that he can stand for three minutes without pain and can sit for 10 minutes before he feels "heat" and that "the circulation is not very good." R. at 35. He testified that a doctor told him not to lift more than 20 pounds. *Id*.

Plaintiff completed six years of education in Mexico. R. at 32. He described his ability to communicate in English as "[v]ery little" and testified that he cannot read or write in English. *Id*. He also testified that has "[v]ery little" reading or writing abilities in Spanish, noting "my education wasn't that much." R. at 33. Plaintiff lives with his wife and son. His wife works and his son, who recently graduated from high school, has a part-time job. R. at 33, 37. Plaintiff drives two to three times a week, sometimes goes to the grocery store, but does not do any household chores. R. at 37.

The ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. R. at 27. During the hearing, Pamela Tucker, a vocational expert ("VE"), described Plaintiff's past relevant work as (1) an assembler, classified as medium, semi-skilled; (2) machine operator, classified as medium, semi-skilled; (3) laborer, classified medium, unskilled; and (4) forklift operator, classified as medium, semi-skilled. R. at 41.

At the administrative hearing, the ALJ posed two hypothetical questions to the VE. First, the ALJ described someone Plaintiff's age, education, and work experience who could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk a total of 6 hours during an 8 hour day, sit 6 hours during an 8 hour day. This hypothetical individual could not do any pushing or pulling with the left lower extremity, needed a sit/stand option at will and had to be allowed to use a cane for ambulation. The individual never climbs ladders, ropes or scaffolding, but occasionally climbs ramps and stairs, as well as occasionally balances, stoops, crouches, kneels and crawls. *Id.* The VE testified that this hypothetical individual could perform (1) the work of a checker, where there are approximately 1,600 positions, reduced to 900 positions, (2) the work of an assembler, where there are approximately 3,800 positions, reduced to 1,000, or (3) the work of a laundry sorter, where there would be approximately 1,000 positions, reduced to 400 positions.

Next, the ALJ asked about a second hypothetical individual, with more severe limitations. This individual was someone Plaintiff's age, education and work experience who could lift and carry 20 pounds occasionally, 10 pounds, frequently, stand/or walk a total of 2 hours during an 8 hour work day, and sit at least 6 hours during an 8 hour work day. This hypothetical individual should never climb ladders, ropes or scaffolding, occasionally climb ramps and stairs, occasionally balances, stoops, crouches, kneels and crawls. Such an individual needed to use a cane for ambulation, should not use the lower extremity for pushing or pulling, and such an individual needs a sit/stand option at will. To this hypothetical, the VE testified that this person would be capable of performing (1) the work of a bunch sorter, where there would be approximately 800 positions, reduced to 400, (2) the work of a bunch packer, where there are approximately 1,200 positions, reduced to 600, or (3) the work of an assembler, where there are

8

approximately 4,000 reduced to 2,000. R. at 42. The VE explained that the reduced numbers for both hypotheticals referred to the number of positions where an individual can sit/stand at will. R. at 43.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. See *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and were made under the correct legal standard. See *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the

factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. See *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); see also *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**IV.     Disability Standard**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if so, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); see also *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id.* at 1000; see also *Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**V.     Analysis**

Plaintiff argues that the ALJ's decision was erroneous and not supported by substantial evidence for the following reasons: (1) the ALJ erred by finding that Plaintiff was not credible to the extent that the medical treatments he received and his daily activities are not to be expected of a disabled individual; (2) the ALJ's RFC and hypothetical questions failed to accurately reflect Plaintiff's nonexertional limitations and need to alternate between sitting and standing; and (3) the ALJ's opinion was not consistent with the VE's testimony and SSR 00-4p. The Commissioner argues that the ALJ's findings are supported by substantial evidence and that the ALJ complied with the relevant legal requirements. The Court agrees with the Commissioner— the ALJ's decision is supported by substantial evidence and the ALJ did not commit legal error.

**A.     Credibility Determination**

Plaintiff argues that the ALJ did not provide a meaningful discussion in support of her credibility finding, as required by SSR 96-7 and mischaracterized Plaintiff's treatments as successful. In response, the Commissioner contends that the ALJ's discussion of her reasoning was sufficient and her characterization of Plaintiff's treatments was supported by substantial evidence.

The Social Security Regulations provide that in making a disability determination the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. See 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. See *id.* The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably

could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statements about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. See SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

The Seventh Circuit has maintained a highly deferential standard of review regarding credibility: "a court should conclude that a credibility determination is patently wrong only when it 'lacks any explanation or support.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states that he or she is unable to work. See *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996).

In the present case, Plaintiff claims that the ALJ used only boilerplate and conclusory language, rather than engaging in a meaningful discussion, to support her finding that Plaintiff's daily activities exceeded those one would expect from a disabled individual. Regarding the

13

required level of analysis for an ALJ making a credibility determination, Social Security Ruling 96-7p ("SSR 96-7p") states that the "determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p; see also *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). As examples of insufficient analysis the Ruling states that the ALJ should not merely make statements such as "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p.

Here, the ALJ engaged in meaningful discussion before reaching her credibility determination and avoided simple conclusory determinations like the ones noted above. Instead, the ALJ engaged in a lengthy discussion of the objective medical evidence. The ALJ also made ample mention of Plaintiff's duration and frequency of pain. R. at 25. Additionally, the ALJ discussed Plaintiff's daily activities and noted which of those activities formed the foundation for her conclusions. R. at 25-26. The ALJ noted that Plaintiff heats up his meals, drives 2-3 times a week, and is learning to use a computer, among other daily activities, and then concluded that the activities are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. at 26. While the ALJ did eventually draw a conclusion from this information, that conclusion was supported by a sufficient discussion of her reasoning. The ALJ fully supported her credibility determination by identifying multiple relevant factors and conducting a thorough analysis.

Additionally, Plaintiff asserts that the ALJ's credibility determination mischaracterized Plaintiff's treatments as successful. While the ALJ does conclude that Plaintiff's treatments have been generally successful at alleviating Plaintiff's symptoms, this is supported by substantial

14

evidence in the record. R. at 25. In support of the assertion, the ALJ cites to several places in the record where Plaintiff's doctors prescribed a treatment, such as physical therapy and the use of a cane, after which the doctors saw improvement in Plaintiff's symptoms. The Court finds this evidence to be a reasonable basis for the ALJ's conclusion that Plaintiff's treatments have been generally successful.

### B. The Residual Functional Capacity and the Hypothetical Question

Plaintiff next contends that the ALJ's hypothetical questions posed to the VE and the ALJ's RFC failed to take into account Plaintiff's nonexertional limitations and failed to properly specify Plaintiff's sit/stand requirements. Each argument will be discussed in turn.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404. 1527(e)(2); *Diaz*, 55 F.3d at 306 n. 2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96-8p. "The RFC assessment is a function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities." *Id*. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. The ALJ's RFC determination is often determined in part by a hypothetical question posed to the VE at the hearing.

Plaintiff claims that the hypothetical questions failed to reflect Plaintiff's nonexertional limitations, namely his inability to speak, read or write in English, or to read or write in Spanish and therefore the ALJ's RFC was based on incomplete evidence. Conversely, the Commissioner argues that the inclusion of Plaintiff's education in the hypothetical question, as well as other mentions of the nonexertional limitations generally, was sufficient to account for the Plaintiff's foregoing deficiencies.

The hypothetical that an ALJ poses to a VE must ordinarily include all limitations supported by the medical evidence of record. *Patty v. Barnhart*, 189 F. App'x 517, 521 (7th Cir. 2006). However, there is an exception to this general rule for cases where the VE independently learned of limitations, such as through questioning at the hearing. See *Steele*, 290 F.3d at 942; see also *Ragsdale v. Shalala*, 53 F.3d 816, 818-821 (7th Cir. 1995) (concluding that "an incomplete hypothetical question may be cured by a showing that prior to testifying the vocational expert reviewed the claimant's record containing the omitted information). If there is some evidence in the record that reflects that the vocational expert independently knew of the limitations, then the Court can presume that the VE accounted for them. See *Steele*, 290 F.3d at 942.

The hypothetical in this case required the VE to "[c]onsider an individual, such as the claimant's age, education, work experience…" R. at 41-42. Earlier in the hearing, Plaintiff had testified to his limited ability to communicate in English, his inability to read or write in English, and his limited ability to read and write in Spanish. R. at 32-33. Additionally, the Plaintiff spoke through a Spanish interpreter throughout the hearing. At the conclusion of the ALJ's questioning of Plaintiff, the VE, in response to a question by the ALJ, stated that she did not have any clarifying questions for the Plaintiff. R. at 34. Lastly, before providing her opinions, the VE testified that she had reviewed the exhibits and heard the Plaintiff's testimony. R. at 41. This is sufficient evidence to demonstrate that the VE took into account all the information at the hearing while responding to the ALJ's hypothetical. See *Steele*, 290 F.3d at 942.

Next, Plaintiff alleges that the ALJ failed to adequately account for Plaintiff's sit/stand limitations in her hypothetical questions and RFC. Plaintiff's argument relies entirely on *Castrejon v. Apfel*, 131 F. Supp. 2d 1053, 1057 (E.D. Wis. 2001), which states that "[t]he RFC

16

assessment must be specific as to the frequency of the individual's need to alternative sitting and standing" (quoting SSR. No. 98-8p). However, in *Castrejon*, the hypothetical question and the RFC mentioned a sit/stand option, whereas in this case the ALJ required a "sit/stand option at will." This is a significant distinction. A sit/stand option at will is frequently used in the Seventh Circuit, demonstrating that an "at will" option is a sufficient specification of frequency of the individual's need. See *Zblewski v. Astrue*, 302 Fed. App'x. 488, 492 (7th Cir. 2008); *Books v. Chatter*, 91 F.3d 972, 976 (7th Cir. 1996); *Schneeberg v. Astrue*, 669 F. Supp. 2d 946, 949 (W.D. Wis. 2009). By specifying that the option must be "at will," the ALJ limits the possible employment opportunities for the Plaintiff to those where he can switch between sitting and standing as frequently as he chooses. In fact, the VE specifically noted that the number of job opportunities available were reduced to only include those that would allow for an at will sit/stand option.

### D. Vocational Expert Testimony

Finally, Plaintiff contends that inconsistencies between the occupations identified by the VE and the occupations mentioned in the ALJ's decision make it impossible to determine whether the occupations satisfy the requirements in the ALJ's RFC. The VE mentioned the jobs bunch sorter, bunch packer, and assembler, while the ALJ's decision identifies the jobs as "bench sorter," "bench parker" and "bench assembler." However, in the ALJ's decision, the number of available jobs listed for each occupation correlates to the VE's testimony. This suggests that the ALJ made a typographical error, but was correctly tracking and referencing the VE's testimony. The errors do not make it impossible to conclude whether the ALJ's RFC was accurate. Therefore, the Court will not reverse or remand the ALJ's decision based on this discrepancy. See *Shinski v. Sanders*,

129 S. Ct. 1696, 1705 (2009) (noting that courts should review cases "without regard to errors that do not affect the parties substantial rights").

Additionally, Plaintiff alleges that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") and that the ALJ failed to adequately resolve those conflicts. Under SSR 00-4p, the ALJ has an affirmative responsibility to ask the VE if her testimony conflicts with the DOT. See *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Additionally, if the evidence from the VE "appears to conflict with the DOT," then the ALJ must make a further inquiry to obtain a reasonable explanation for the conflict. *Overman v. Astrue*, 546 F.3d 456, 63 (7th Cir. 2008) (quoting SSR 00-4p). In this case, at the conclusion of the hearing, the ALJ asked the VE whether her testimony was consistent with DOT to which the VE responded in the affirmative, thus satisfying the first part of the test.

Plaintiff contends, however, that the ALJ failed to meet the second requirement—namely, that she make an independent inquiry into whether inconsistencies existed. Plaintiff's argument fails to consider that the case law makes clear that an ALJ need not make any independent inquiry unless a conflict is "apparent." See *Overman*, 546 F.3d at 63; *Stark v. Astrue*, 278 Fed. App'x. 661, 667 (7th Cir. 2008) (stating that since Plaintiff's testimony did not present any apparent conflict with the DOT, the ALJ "had no reason to doubt his assurance that the VE's jobs corresponded with the DOT"). Therefore, once the VE confirms that her testimony is consistent with the DOT, the ALJ must only make further inquiry if some other information makes a conflict apparent. *Id*. In this case, Plaintiff's attorney had the opportunity to cross-examine the VE and did not raise any inconsistencies between the VE's testimony and the DOT. Furthermore, nothing in Plaintiff's testimony raised an apparent conflict. Therefore, after the VE affirmed that her testimony was consistent with the DOT, the ALJ was not required to make any further inquiry.

The Court recognizes, however, that there were in fact inconsistencies between the VE's testimony and the DOT. As Plaintiff notes, two of the three occupations listed by the VE are not listed in the DOT. But one occupation, assembler/bench assembler, for which there are 2,000 jobs available, is listed in the DOT. Moreover, Seventh Circuit case law suggests that an occupation with 2,000 available jobs is well within the parameters of a sufficient occupational base. See *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (holding that 1,400 jobs is a significant number of jobs to deny disability); see also *Ortiz v. Chater*, 986 F. Supp. 479, 490 (finding 2,000 jobs to which a vocational expert testified constituted a significant number of jobs); *Nix v. Sullivan*, 744 F. Supp. 855, 863 (N.D. Ill. 1990) (675 jobs a significant number), *aff'd without opinion*, 936 F.2d 757 (7th Cir. 1991). Therefore, even if the ALJ did err in not further questioning the VE, the error was harmless. See *Coleman v. Astrue*, 269 Fed. App'x 596, 602 (7th Cir. 2008) (concluding that the ALJ's failure to inquire about a conflict was harmless even excluding conflicting evidence because 8,000 other jobs remained available).

**VI.    Conclusion**

For the foregoing reasons, the Court finds that the decision of the ALJ is supported by substantial evidence and does not contain any errors of law. Therefore, the Court denies Plaintiff's motion for summary reversal and reaffirms the ALJ's decision in all respects.

Dated: March 27, 2012

_____
Robert M. Dow, Jr.
United States District Judge